IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


BERNARD JENKS,             )
                                  )
            Plaintiff,      )
                                  )
          v.            )     Civil Action No. 06-1428
                                  )     Judge David S. Cercone
PORT AUTHORITY OF ALLEGHENY    )     Magistrate Judge Lisa Pupo Lenihan
COUNTY; WILLIAM WAGNER and     )
MICHAEL HARRIS, individually and    )
in their official capacities             )
                                  )
          Defendants.    )


## REPORT AND RECOMMENDATION


## I. RECOMMENDATION

It is respectfully recommended that the Motions for Summary Judgment filed by

Defendants be denied as to Count I as against Defendants Port Authority and Wagner, but

granted as to all other claims and as to the unavailability of punitive damages against Defendant

Port Authority.  Although Plaintiff has established fact question(s) as to whether these

Defendants' actions were adequately founded in reasonable belief/probable cause, and thus is

entitled to proceed on his claim for violation of his Fourth Amendment rights by false

arrest/imprisonment under 42 U.S.C. § 1983 as against Defendants Port Authority and Wagner,[1]

as to the other claims: (a)  Plaintiff has failed to meet his summary judgment burden as to (and

---

1.  The Fourth Amendment is enforceable against state and local governmental agencies through
the Fourteenth Amendment.  See Mapp v. Ohio, 367 U.S. 643, 655 (1961).

indeed has not even consistently alleged) any action by Defendant Harris in furtherance of Plaintiff's false arrest or criminal prosecution; (b) Defendants, as employees/officers of PAT, cannot have conspired and no evidence sufficient to bring the action within an exception to the intra-agency conspiracy doctrine has been adduced; and (c) Plaintiff raises no argument in objection to Defendants' Motions for Summary Judgment as to his state law claims, and PAT and the Individual Defendants are protected by sovereign immunity from Plaintiff's state law claims for intentional torts committed within the scope of employment. In addition, punitive damages are unavailable against the Port Authority.

## II. REPORT

### A. Statement of Facts and Procedural History

As more fully set forth in the parties' filings in this case, Plaintiff Bernard Jenks ("Jenks") was employed by Defendant Port Authority of Allegheny County ("PAT") for 23 years as a "service employee" providing equipment maintenance services to the transit authority. The facts, taken in the light most favorable to Plaintiff, are as follows:

On the evening of June 13, 2005,[2] Jenks and his co-worker, James Locksa ("Locksa") were attempting to load a scrubbing machine weighing in excess of 200 pounds onto a light-rail

---

2. The parties dispute (and Plaintiff is unclear as to) the time this incident occurred. See, e.g., Plaintiff's Memorandum in Opposition to Port Authority's Motion for Summary Judgment ("Memo in Opposition to PAT") at 2 (indicating incident occurred at 10:30 p.m.); Memorandum in Opposition to Defendants William Wagner's and Michael Harris' Motion for Summary Judgment ("Memo in Opposition to Individual Defendants") at 2 (indicating incident occurred at approximately 8:20 p.m.); Defendants' Joint Concise Statement of Material Facts at ¶ 6 (giving incident time as approximately 9:30 p.m.).

transit vehicle (an "LRV") stopped at PAT's Wood Street light rail station.[3]  They had placed a 3' x 4' plywood bridge/ramp between the passenger platform and the entrance to the LRV, Locksa was inside the vehicle, and Jenks was attempting to push the scrubber up the ramp to Locksa. The doors to the LRV opened and closed several times, and then the driver pulled away from and departed the Wood Street station, with Locksa aboard.  This dislocated the plywood ramp, causing the scrubber to roll back into Plaintiff and strike him in the right hip.  The LRV dragged the plywood to the end of the passenger platform, whence it struck and flew through the air over the platform.

Sometime thereafter,[4] Jenks and Locksa reported the incident and injury to PAT patrolman, Officer Wilson ("Officer Wilson").  It was reported that the LRV driver might have been, or was, Gloria Bower, an employee with whom Jenks had previous difficulties.[5]  Wilson spoke with Jenks, but took no notes, and completed his written report the following morning.  It was also signed/approved by his supervising officer, Sergeant Hudzinski.  Jenks, Locksa, and another co-worker, Charles Burkovich, also reported the incident and hip injury to their foreman,

---

3. Cf. Defendants' Joint Concise Statement of Material Facts at ¶ 7 ("The scrubber weights [*sic*] approximately 300-400 pounds.").  See also id. at ¶ 5 (indicating that Jenks was working a 6:00 p.m. to 2:25 a.m. shift).

4.  Here again, Plaintiff's statements are not clearly consistent.  See, *e.g.*, Memo in Opposition to PAT (attesting report was made "[a] short time" after the incident"); Memo in Opposition to Individual Defendants (attesting it was made approximately two hours later).  Cf. Defendants' Joint Concise Statement of Material Facts at ¶ 15 (giving time of reporting to Officer Wilson as approximately 11:30 p.m.).

5.  The parties dispute who, and with what degree of certainty, provided this identification. Jenks asserts that Bower was identified, or tentatively identified, by his co-worker, Locksa, who was on the LRV, and that Jenks did not see the driver while he was attempting to load the scrubber.  Cf. Defendants' Joint Concise Statement of Material Facts at ¶ 8 (Jenks understood from Locksa's remark that the LRV driver was Bower).

John Bartkins ("Bartkins"). When Jenks' shift break concluded at 12:00 a.m., Bartkins escorted him to Mercy Hospital Emergency Room. The Hospital records indicate that Plaintiff was diagnosed with hip and elbow strain, prescribed Vicodin for his pain, and directed that he stay off work for two (2) days.[6]

Later that same day - June 14 - Jenks reported the incident to a 1-800 telephone line as well as by written report, in accordance with company policy. On June 15, PAT's Worker's Compensation Department directed him to see the employer's physician, who diagnosed non-work related hip pain. On June 16, Plaintiff returned to the Hospital Emergency Room, was diagnosed with hip strain and contusion, and was instructed to apply ice, use a cane for ambulation, and treat with Ibuprofen until his hip pain fully resolved.

In response to Plaintiff's work-related injury reports on June 14, PAT's Workers' Compensation Manager, Gigi Sillman ("Sillman") (a) interviewed his foreman, Bartkins and, owing to Plaintiff's previous history of multiple Workers' Compensation claims, (b) contacted the Port Authority's Chief of Police, William McArdle ("Chief McArdle") to inquire about police report(s) and/or video(s) of the alleged incident, and (c) placed Plaintiff under private investigative surveillance. Sillman made no request for the Hospital's medical records nor did she conduct any other employee interviews.

Chief McArdle delegated inquiry to Detective Wagner, who reviewed surveillance video which showed Jenks attempting to load the scrubber at the Wood Street Station, but did not show the scrubber coming into contact with Jenks' right hip. Detective Wagner then had Sergeant Hudinski, who routinely handled surveillance video matters for PAT, provide him with a copy of

---

6. See Memo in Opposition to PAT at 2.

4

the video. Chief McArdle and Detective Wagner reviewed the video together, noting that it showed no contact with the scrubber nor any reaction (such as defensive movements) by Jenks, and that subsequent video showed Jenks continuing work without apparent disability during his shift that night. They concluded that Jenks had made a false report to Officer Wilson,[7] and on June 27 Detective Wagner prepared, with Chief McArdle's approval, a Criminal Complaint which was filed by PAT's Police Department against Jenks.[8] Neither Detective Wagner nor

---

7. The parties dispute several critical facts as to the PAT surveillance video. They agree that the surveillance video does not provide continuous recording, but rather records in a time-lapse manner, *e.g.*, 5 frames per second. They agree that Chief McArdle has experience with surveillance tapes, was aware of their time-lapse nature, and regarded such tapes' typical fraction-of-a-second lapses as *de minimus*. They also appear to agree that Sergeant Hudinski was a technically-proficient employee commonly called upon for video-related matters, and that - despite his knowledge of the incident as the supervising signatory to Officer Wilson's report - he was not consulted regarding the facial discrepancy between the employee-report and the time-lapse videotape in this case.

Plaintiff further asserts that frame-by-frame viewing of this particular video - which could have been done on PAT's own equipment at the time of its investigation by, *e.g.*, Sergeant Hudinski, and which was subsequently performed by Plaintiff's expert witness, Jay Wren - reveals that it also contains observable time gaps extending over many seconds and occurring at various intervals. Plaintiff asserts that contact with the scrubber occurred at a time corresponding to a brief recording gap in the tape. <u>See, *e.g.*</u>, Plaintiff's Response to Defendants' Concise Statement of Material Facts at ¶¶ 42, 47, 48.

Although Plaintiff's initial allegations reflected a belief that the videotape was "illegally altered" or "edited" to omit evidence favorable to Plaintiff, <u>see, *e.g.*</u>, Complaint at Counts II-III, his current assertion regarding the videotape appears to be that the camera itself "edits" the recorded action "at seemingly irregular intervals", rather than that it was physically, subsequently altered or selectively erased by one or more of the Defendants. <u>See</u> Memo in Opposition to Individual Defendants at 12.

8. The Complaint charged Plaintiff with False Reports to Law Enforcement Officers under 18 Pa.C.S.A. § 4906(b)(1) and averred that Plaintiff "stated he was attempting to load a piece of cleaning equipment onto a trolley car when it rolled toward him and struck him in his right hip, knowing it did not occur." <u>See</u> Memo in Opposition to Individual Defendants at 2.

Chief McArdle made any inquiry into Jenk's related medical records, nor did they interview any of the employees with first-hand knowledge of the events of the incident evening.

Detective Wagner also provided a copy of the surveillance video to Sillman, and informed her that the Department was undertaking criminal proceedings against Jenks for a false police report. Sillman denied Jenks' workers' compensation claim on June 30, 2005.

Members of the PAT Police Department came to Jenks' home, notified him that they had a warrant for his arrest, and allowed him to turn himself in rather than be seen by his neighbors being escorted from his home. Jenks did so and was taken to the Allegheny County Jail where he spent fifteen (15) hours with others in a crowded holding cell. At the preliminary hearing, the surveillance video was played and Sergeant Wagner represented to the District Judge that it was a reliably complete record of the events. The case was then held for criminal trial.

Michael Harris ("Harris"), PAT's Manager of Employee Relations, then became involved. See Memo in Opposition to PAT at 5.[9] He, too, undertook no inquiry into medical records or employee witnesses. A Disciplinary Hearing was held in June and completed in July; the surveillance video was played and Jenks was fired. Jenks filed for unemployment benefits, which PAT immediately denied on the basis of "willful misconduct", *i.e.* making a false report, and which Plaintiff appealed.

Jenks' defense counsel filed a Petition for Habeas Corpus with the Motions Judge in Criminal Court and, on August 26, 2005, at Jenks' hearing before Judge Colville of the Allegheny County Court of Common Pleas, the surveillance video and medical records were

---

9. But see Memo in Opposition to Individual Defendants at 5 (asserting that Harris determined that Jenks had violated PAT's Performance Code "prior to Plaintiff's arrest after reviewing the video and the officer's report").

reviewed and the case against Jenks was *nolle prossed* by the County Assistant District Attorney.[10]  Judge Colville expressed skepticism regarding the legal legitimacy of seeking criminal prosecution for false reporting to a police officer of a *non-criminal* matter such as a work-related injury reported to a PAT employee.  He cautioned Defendant regarding unfair labor practices.[11]

Unemployment compensation proceedings on Plaintiff's appeal of PAT's benefit denial went forward from September, 2005 to November 21, 2005.  The Referee then concluded that PAT had failed to meet its burden of showing that Jenks had committed willful misconduct and ordered the payment of unemployment compensation benefits to him.  PAT appealed to the Unemployment Compensation Board of Review and the Referee's conclusion that the surveillance video did not establish false reporting was affirmed on February 9, 2006.

Following the unemployment compensation determination, Plaintiff's Union filed a grievance on his behalf, which was ultimately settled ten (10) months after the incident, in late April, 2006.  By the settlement terms, Plaintiff received a thirty (30) day suspension, back pay in excess of $26,000 (offset by unemployment compensation received), and reinstatement to work, with temporary light-duty.[12]  The Settlement Agreement identifies the grievance as the adverse employment actions for false reporting, and states that the "resolution [was] remedy in full for [the] grievance and [was] final and binding".

---

10.  Plaintiff attests that Judge Colville granted his request and reviewed the surveillance video frame-by-frame, rather than at regular speed, at which time the time-gaps were apparent.

11.  <u>See</u> Plaintiff's Counter-Statement to Defendants' Concise Statement of Material Facts at ¶ 31 (quoting Judge Colville's indication that he found "it extremely disturbing" that the matter was "in Criminal Court").

12.  <u>See</u> Defendants' Joint Concise Statement of Material Facts at ¶ 92.

In October, 2006, Plaintiff filed the instant action (a) asserting that he was falsely charged with/illegally arrested for filing a false police report, and (b) alleging civil rights and state law violations against PAT, and against Defendants Wagner and Harris in their individual and official capacities. More particularly, the Complaint sets forth the following claims:

Count I - Alleging civil rights claims under 42 U.S.C. § 1983 for Constitutional violations against each Defendant premised on an assertion that Wagner had Plaintiff arrested on false allegations with the approval and consent and at the direction of PAT and Harris. Complaint at ¶ 43.

Count II - Alleging conspiracy under 42 U.S.C. §1985 against each Defendant and premised on an assertion that they acted in concert to deprive Plaintiff of his constitutional rights.

Counts III through VIII - Alleging state law claims for conspiracy to unlawfully arrest, false arrest/imprisonment, intentional infliction of emotional distress, malicious abuse of process, wrongful use of civil proceedings, and wrongful termination.


**B.  Motion for Summary Judgment**

In deciding a motion for summary judgment, the Court considers whether the non-moving party has - through pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any - established any genuine issue of material fact sufficient for a reasonable jury to find in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986). The non-moving party may not rest upon factually unsupported allegations contained in its pleadings; however, all inferences must be drawn and all doubts resolved in his favor. See

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Colburn v. Upper Darby Townshp., 946 F.2d 1017, 1020 (3d Cir. 1990). If the non-moving party fails to present evidence sufficient to establish an "element essential to that party's case, and on which that party will bear the burden of proof at trial", summary judgment is appropriate. Celotex, 477 U.S. at 322. The non-moving party must go beyond his pleadings and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories to show that there is a genuine issue for trial. Id. at 324.

### C. Analysis

### 1. Count I - 42 U.S.C. § 1983

Section 1983 does not itself confer substantive rights, but provides a remedy for redress when a Constitutionally-protected right has been violated under the color of state law. See Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). To succeed on a claim under § 1983, a plaintiff must demonstrate violation of a Constitutional right by a person acting under the color of state law. There is no dispute that the Individual Defendants were so acting.[13] A § 1983 claim can encompass unlawful arrest, false imprisonment and/or malicious prosecution.[14]

---

13. Municipalities and their agencies are considered "persons" under § 1983 and thus can be sued directly for damages and relief. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989); Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978).

14. Cf. Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007) (noting that a § 1983 Fourth Amendment malicious prosecution claim requires that the defendant initiated a criminal proceeding without probable cause and maliciously or for a purpose other than bringing the plaintiff to justice, that plaintiff suffered deprivation of a liberty consistent with the concept of

(continued...)

### (a) *Failure to Adduce Evidence Against Defendant Harris as to This Claim*

As noted above, this Count alleges that Wagner had Plaintiff arrested on false and/or malicious allegations with an intention that it lead to his termination and "with the approval and consent and at the direction of [PAT and Harris]."  Complaint at ¶ 43.  <u>See also</u> Memo in Opposition to PAT at 7 (asserting, as § 1983 violation, that "[h]ere the Defendants violated Plaintiff's Fourth Amendment rights by subjecting him to seizure without probable cause, false arrest and malicious persecution."); <u>id.</u> (asserting "Defendants' conduct in charging Plaintiff with a crime without probable cause and with the intent to terminate his employment" and to "preclude his Workmen's Compensation claim, his Unemployment Compensation claim, and frustrate his due process rights"); Memo in Opposition to Individual Defendants at 1 ("The claims against the individual Defendants Wagner and Harris arise out of a false Affidavit of Probable Cause and Criminal Complaint filed against the Plaintiff . . . on June 27, 2005 by Defendant William Wagner acting on behalf of the Defendant Port Authority.").

Plaintiff fails to adduce evidence, however, of Harris' involvement in his arrest or criminal prosecution.  Neither Plaintiff's own narratives of the underlying events, nor his own Concise Statements of Material Facts or Replies to the Motions for Summary Judgment factually connect Harris to the PAT Police Department's criminal prosecution.  As noted *supra*, in portions of his inconsistent factual assertions, Plaintiff indicates that Harris' involvement began subsequent to his arrest.  <u>See, *e.g.*,</u> Memo in Opposition to PAT at 4-5 (following chronologic account of incident, limited inquiry, arrest and preliminary hearing with new paragraph

---

14.  (...continued)
seizure as a consequence, and that the proceeding ended in his favor).

beginning "Enter Michael Harris . . . ."). In others, he asserts Harris' earlier involvement. <u>See, e.g.</u>, Memo in Opposition to Individual Defendants at 6 (asserting that Harris "conspired" with Wagner and Sillman).[15] But nowhere does Plaintiff provide - as he now must - evidence to support his bald allegations of any conduct by Harris in furtherance of the actionable § 1983 violations. <u>See</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1294 (3d Cir. 1997) (holding that plaintiff must allege defendant was personally involved in the deprivation of his federally-protected rights to state claim for relief under § 1983). <u>Cf.</u> Reply Brief of Individual Defendants in Support of Motion for Summary Judgment at 2-3 (citing absence of evidence that Harris participated in Wagner's decision to arrest Jenks or participated in a conspiracy regarding Jenks' criminal prosecution). For this reason, summary judgment should be granted to Defendant Harris on this Count.[16]

---

15. <u>See also</u> Memo in Opposition to PAT at 11 (alleging McArdle, Wagner, Harris and Sillman "[t]ogether . . . 'investigated' Jenks which resulted in a false arrest" and "Defendants together . . . orchestrated the phony charges"); Memo in Opposition to Individual Defendants at 10 (asserting that "Sillman requested both Harris and Chief McArdle to investigate the Jenks incident"); Plaintiff's Response to Defendants' Concise Statement of Material Facts at ¶ 65 ("Harris said that he investigated Jenks after his conversation with the Port Authority law enforcement prior to Jenk's arrest.") ; Plaintiff's Counter-Statement to Defendants' Concise Statement of Material Facts at ¶¶ 33-38 (Harris reviewed Sillman's information and the surveillance video "simultaneously with the criminal complaint being filed", held a Disciplinary hearing, and discharged Jenks on grounds of false reporting).

16. As noted above, Plaintiff settled his claims with regard to the termination of his employment and the denials of benefits related to the employment actions underlying portions of this case through a Union grievance that was resolved in April, 2006. Allegations against Defendant Harris regarding his conduct in "investigating" Plaintiff (in whatever time frame) and thence making *employment decisions* are not cognizable under Plaintiff's surviving § 1983 action regarding his criminal prosecution. <u>See, e.g.</u>, Memo in Opposition to Individual Defendants at 6 (asserting that Harris maliciously interfered with Plaintiff's grievance procedure, based his Performance Report on criminal charges "long after the criminal case was terminated in favor of Jenks and it was clear Jenks had done nothing wrong", and utilized the videotape at Plaintiff's

(continued...)

### *(b) Qualified Immunity as to Defendant Wagner*

As Plaintiff duly notes, Defendant Wagner is not entitled to qualified immunity where, as here, the cause of action turns on his execution of a criminal Affidavit and other actions leading to Plaintiff's arrest, imprisonment and criminal prosecution without probable cause, in violation of Plaintiff's Fourth Amendment rights. A defendant's otherwise illegal actions may be protected by qualified immunity if he can show that his offending conduct did not "violate clearly established statutory or constitutional rights which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Defendant Wagner has not carried that burden. Rather, it is clearly established that an officer must act in an objectively reasonable manner when considering the sufficiency of evidence used as the basis for a probable cause affidavit and criminal prosecution. See Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000). And Courts have certainly agreed that the failure to do so effects a Constitutional violation. The Court cannot, as a matter of law, determine that Defendant Wagner's actions were objectively reasonable where there exist disputed and material facts. See, *e.g.*, Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002).

### *(c) Underlying Reasonableness/Probable Cause*

---

16. (...continued)
unemployment compensation hearing knowing that it was unreliable); Plaintiff's Response to Defendants' Concise Statement of Material Facts at ¶¶ 76-88 (Harris investigated at the request of Sillman in the Workmen's Compensation Department; Jenks was charged at the Disciplinary Hearing with falsely reporting an injury; Harris relied on his discussions with Sillman and with PAT law enforcement in deciding to pursue disciplinary action against Plaintiff and based the disciplinary proceedings on Wagner's reporting/documents). Cf. Memo in Opposition to PAT at 12 ("The Settlement Agreement . . . of the grievance proceeding does not preclude Jenks' 1983 claims."); Plaintiff's Response to Defendants' Concise Statement of Material Facts at ¶ 92 ("[T]he grievance procedure . . . is not a release for the civil rights claims set out in this litigation.").

At bottom, the core § 1983 issue to this factually-complicated case is clear and narrow: Was Plaintiff's criminal arrest and prosecution supported by reasonable belief/probable cause? See, *e.g.*, Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988) (directing that proper inquiry in § 1983 claim for false arrest or misuse of criminal process is "whether the arresting officers had probable cause to believe the person arrested had committed the offense").[17] The question of probable cause in a § 1983 action is generally for the jury, unless the evidence viewed in the light most favorable to the Plaintiff could not support a finding in his favor. Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000).[18]

Plaintiff's evidence includes that: (1) Officer Wilson's Report identified both (a) other employee(s) with first-hand knowledge of the incident and (b) Jenk's contemporaneous receipt of third-party medical evaluation/treatment; (2) PAT/Chief McArdle was aware that surveillance videos are time-lapse and that PAT possessed the equipment and technical knowledge to conduct a frame-by-frame review of the surveillance video that might have identified relevant time gaps;[19] (3) Sgt. Hudzinski was not requested to break down the videotape in this case, despite

---

17. Cf. Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) ("[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.").

18. Defendants place great emphasis on the Magistrate's determination. The Third Circuit has, however, been clear in holding that "an arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability" under § 1983 or establish probable cause. Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000). Rather, Plaintiff may show by a preponderance of the evidence that the officer knowingly or recklessly made material false statements or omissions. Merkle, 211 F.3d at 789.

19. PAT attests that its surveillance camera contractor, GE Transportation Systems, represented that the digital video recorder installed in 2003 would record at a number of frames per second standard in the surveillance video industry and that it has since used it to "allege criminal conduct for years without any reason to question its sufficiency as an investigative tool."

(continued...)

13

known facial discrepancies between the employee's report and the videotape;[20] (4) the surveillance video, in the view of Plaintiff's expert witness, Jay Wren, contains time gaps of from five (5) to sixty (60) seconds duration;[21] (5) neither Detective Wagner nor Chief McArdle made any request for/review of contemporaneous related medical records, despite knowledge that Plaintiff was treated at the Hospital that evening; and (6) neither Detective Wagner nor Chief McArdle spoke with Jenk's co-worker Locksa, Officer Wilson, foreman Bartkins, or any other employee with first-hand knowledge of the events of that evening.

PAT asserts that it is entitled to summary judgment on Plaintiff's § 1983 count because it had no duty to investigate potentially exculpatory evidence where it had probable cause to charge Jenks with false reporting. See, e.g. Dintino v. Edwards, 243 F.Supp.32d 155 (E.D. Pa. 2003) (officer who (a) found overlapping hours in aerobics and police department employment records, (b) conducted surveillance and observed plaintiff engaged in other activities during times she claimed police overtime, and (c) obtained corroborating statements from interviewed witnesses, had probable cause for charge of fraudulent overtime claims); Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); Vasquez v. Rossnagle, 173 F.Supp.2d 500 (E.D. Pa. 2001). But cases holding that officers have no duty to conduct exhaustive investigations or to further pursue, e.g., asserted alibis, *where the evidence in their possession is sufficient for*

_____

19. (...continued)
Defendants' Joint Concise Statement of Material Facts at ¶¶ 29-34.

20. Cf. Defendants' Answer to Plaintiff's Counter-Statement to Defendants' Joint Concise Statement of Material Facts at ¶ 12 (citing Sergeant Hudinski's testimony that "it was simple for him, based on his experience, to break down surveillance video on a frame-by-frame basis" and further acknowledging that PAT "has software in its video room to do so").

21. See Memo in Opposition to Individual Defendants at 8.

*probable cause,* do not suggest that where the evidence is as yet insufficient the officers need make no further inquiry before imposing the force and consequences of the criminal law.[22]

Thus, Defendants' case citations merely beg the question - *i.e.*, *were the surveillance videos reviewed, of themselves, sufficient probable cause to reasonably excuse PAT from any further inquiry* (such as inquiry into whether (a) the medical records reflected contemporaneous third-party observation or documentation of injury, (b) the co-worker(s) present observed impact or subsequent evidence of injury, and/or (c) a more detailed review of the incident-time surveillance tape (*e.g.*, frame-by-frame) would call PAT's conclusion that impact could not have occurred into question). One might also frame this question as whether the time-lapse video could be reasonably relied upon, not only to establish the *occurrence* of something *shown* on the video, but also to establish the *non-occurrence* of something *not shown* (such as the scrubber striking Jenks or Jenks making a defensive movement).[23]

_____

22. <u>See</u> Defendants' Answer to Plaintiff's Counter-Statement to Defendants' Concise Statement of Material Facts at ¶ 2 (acknowledging same, with citation to <u>Merkle</u>).

23. <u>Cf.</u> Defendants' Answer to Plaintiff's Counter-Statement to Defendants' Joint Concise Statement of Material Facts at ¶ 5 (citing testimony of Plaintiff's expert, Jay Wren, that from review of the videotape he could not "conclude that the scrubber did or did not hit [Jenks]"). <u>Compare</u> <u>id.</u> at ¶ 28 (citing testimony of Chief McArdle that surveillance video is "often used to convict bank robbers and support lengthy prison sentences" in that regard).

Although Defendant PAT also points to evidence *shown* on the video - *i.e.*, Jenks' continuing work after the alleged injury - in support of the reasonableness of proceeding under a probable cause standard, <u>see</u> Reply Brief of PAT in Support of Motion for Summary Judgment at 4, this Report concludes such evidence is insufficient for the relief requested (*i.e.*, material fact questions remain).

Perhaps in recognition of material fact questions regarding the reasonableness of its criminal charge of false reporting premised on Jenks' alleging an impact injury which did not occur, Defendants now assert that Jenks' "false reporting" encompassed an assertion that the

(continued...)

It appears to this Court that the PAT Police Department's decisions to obtain a warrant for Plaintiff's arrest, cause his criminal detention in the County jail, and pursue criminal prosecution against him were no small matter,[24] and that Plaintiff has raised sufficient evidence of material fact questions as to the reasonableness of PAT's election to do so.[25]

Defendants' assertions to the contrary notwithstanding, the Settlement Agreement related to Plaintiff's employment grievance presents no bar to the instant claim regarding Jenks' criminal arrest and/or prosecution.[26]  The Settlement Agreement contains no release of these claims; to the contrary, by its plain language it is limited to settlement of the employment grievance.  Cf.

---

23.  (...continued)
driver of the LRV was Gloria Bowers.  The Court notes, as does Plaintiff, that the criminal report which Defendants prepared does not even identify the driver involved, but references only Jenks' reporting of accident/injury.  Protracted factual disputes regarding by whom, and with what certainty, the driver was identified, appear, therefore, largely irrelevant.  To the extent, if any, that they may be deemed relevant to the reasonableness of criminal charges leveled against Jenks in Summer 2005, they raise questions of material fact.  Cf. Plaintiff's Response to Defendants' Concise Statement of Material Facts at ¶ 58 ("Plaintiff was never charged with giving a false report regarding Gloria Bower nor was it referenced in the Criminal Complaint against Jenks."); id. at ¶ 8 ("The identity of the driver is not material . . . Bartkins, Jenks' foreman, testified [that] all three workers . . . thought the driver was Gloria Bower."); id. at ¶ 59.

24.  Indeed, it appears to this Court, as to Judge Colville, to be unusual, and perhaps ill-founded.

25.  The Court notes that Defendants respond to this claim with an assertion that the standard is whether, based on the totality of the circumstances a reasonable person could have believed that Plaintiff had violated the law, which they restate as requiring Plaintiff to establish that the officer (e.g., Defendant Wagner) made a knowingly false or reckless statement in his Affidavit. Defendants assert that there is no evidence that Detective Wagner's Affidavit was knowingly false, and that his beliefs/actions were reasonable because (a) Wagner had not seen Jenks' medical records and (b) the surveillance video had not been edited.  This Court finds, however, questions of fact regarding the reasonableness (vs. recklessness) of proceeding with criminal prosecution without further inquiry (e.g., consultation of readily-available medical records, interview of readily-available witnesses, and/or readily-available in-house frame-by-frame review of time-lapse videotape).

26.  Compare Memo in Support of PAT's Motion for Summary Judgment at 17 (asserting that settlement "preclude[s] all of [Jenks'] claims").

<u>Gunser v. City of Philadelphia</u>, 398 F.Supp.2d 392 (E.D. Pa. 2005) (holding that former-employment-related civil rights claims were precluded by settlement agreement releasing all claims "arising out of the subject matter"); <u>id.</u> (holding that claim for malicious prosecution arising out of filing of criminal charges against plaintiff was not within scope of settlement).

## 2. **Count II - 42 U.S.C. § 1985**

This Count alleges that each of the Defendants "acted in concert to deprive Plaintiff of constitutional rights, including employment and property interests." It further alleges that Wagner and Harris knowingly used an edited surveillance tape that omitted evidence favorable to Plaintiff.

Defendants argue that they are entitle to judgment on this claim because it is premised on an intra-agency conspiracy. As Defendants observe, the intra-agency (or intra-corporate) conspiracy doctrine establishes limitations on a claim for conspiracy to violate Constitutionally-protected rights. And it has been applied to governmental authorities in Pennsylvania. <u>See</u> <u>Heffernan v. Hunter</u>, 189 F.3d 405, 412 n. 5 (3d Cir. 1999); <u>Poli v. SEPTA</u>, 1998 U.S. Dist. LEXIS 9935, **42-45 (E.D. Pa. July 7, 1998). <u>See also</u> <u>Jackson v. T&N Van Service</u>, 2000 U.S. Dist. LEXIS 6210, *16 (E.D. Pa. May 9, 2000) ("Under the intracorporate immunity doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation".). But individual employees of a government authority *can* conspire with one another in their individual capacities *if* (a) an independent third party is alleged to have joined the conspiracy or (b) they were acting in their personal capacities. <u>See</u> <u>Robinson v. Canterbury Vill., Inc.</u>, 848 F.2d 424, 430-31 (3d Cir. 1988). The latter cases

generally entail employees acting for their sole personal benefit outside the scope of their employment. See, e.g., Heffernan, 189 F.3d at 412.

There is no allegation of third-party conspiracy *sub judice*. And although this Count of the Complaint was brought against all Defendants (*i.e.*, it appears intended to allege an intra-agency conspiracy), Plaintiff now attempts to avoid summary judgment under the intra-agency conspiracy doctrine by arguing new facts in his Memorandums of Law in Opposition. He notes, for the first time, that Chief McArdle, Detective Wagner, Defendant Harris, and Sillman are Caucasian, while Plaintiff and Officer Wilson are African-American. And he *suggests* that the actions of the Defendants in this case fall outside the doctrine because the individuals were acting in a personal capacity, *i.e.*, they were motivated by a personal, racially-discriminatory animus. See Memo in Opposition to PAT at 10-11 (asserting only parties' races and that individuals conspired); Memo in Opposition to Individual Defendants at 7 (same). The Court notes that (a) the only individual Defendants in this action are Defendants Wagner and Harris, and (b) Plaintiff has failed to adduce evidence of participation by Harris in furtherance of Plaintiff's arrest, imprisonment or criminal prosecution (as opposed to Harris' involvement in employment decisions). Further, even if the Court considers these new, implied allegations of racial animus in conspiring to violate Plaintiff's Fourth Amendment right as against Defendant Wagner in his individual capacity (the only possibly remaining claim), these entirely speculative assertions of improper motive are simply insufficient to ground an equal protection conspiracy claim based on racial animus. Although Plaintiff directly asserts that he is African-American and Defendant Wagner is Caucasian, nowhere does Plaintiff even directly assert that Defendant

Wagner discussed or agreed with anyone to treat Plaintiff *differently because of his race*.[27]  And

the Complaint itself is devoid of any allegations of racial discrimination (*e.g.*, it raises no claims

under 42 U.S.C. § 2000(e) or under 42 U.S.C. § 1981).[28]

### 3. Counts III - VIII - State Law Claims for Intentional Tort

Defendants assert, and Plaintiff does not dispute in his Memorandums in Opposition to

their Motions for Summary Judgment, that sovereign immunity bars his state law claims.  See

Memo in Opposition to PAT (confining responsive arguments to "civil rights claims"); id. at 6-7

(asserting that state sovereign immunity laws/doctrine do not foreclose § 1983 actions for

violations of federally-guaranteed rights); Memo in Opposition to Individual Defendants (same).

Under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S. § 8541,

municipalities and their agencies are granted sovereign immunity from liability from all state law

tort claims except for specific types of negligently tortious conduct in narrow exceptions not

applicable in this case.  In addition, municipal employees are protected by this sovereign

immunity while acting within the scope of their duties, office(s) or employment.  See McGrath v.

Johnson, 67 F.Supp.2d 499, 512 (E.D. Pa. 1999); St. Germain v. Pennsylvania Liquor Control

---

27.  Cf. Reply Brief of Individual Defendants in Support of Motion for Summary Judgment at 2
(noting that Plaintiff neither alleged nor conducted any discovery regarding racial harassment,
racial animus, or race-based conspiracy).

28.  See Jackson v. Paparo, 2002 WL 32341800, *3 (E.D. Pa. Oct. 28, 2002) (holding that where
only fact to which plaintiff points is that he is African-American and another is white,
conclusory allegation of racial discrimination, absent any evidence, does not create a material
issue of fact precluding grant of summary judgment).  cf. id. (explaining that § 1985 protects
individuals against conspiracies to deny them the equal protection of the laws, and that such a
claim requires that the plaintiff "must come forth with evidence that defendants 'colluded with
the requisite racial or . . . otherwise class-based invidiously discriminatory animus'") (quoting
Davis v. Township of Hillside, 190 F.3d 167, 171 (3d Cir. 1999)).

Board, 2000 WL 39065 (E.D. Pa. Jan. 19, 2000). Plaintiff does not (a) allege in his Complaint that the underlying acts were committed outside the scope of employment, (b) proffer evidence that would support such allegation, if made, nor (c) raise any objection to Defendants' Motion for Summary Judgment in this regard. Cf. St. Germain, *supra* at *3 (noting that conduct is within the scope of employment if (a) it is of the kind employed to perform; b) it occurs substantially within authorized time and space limits; (c) it is actuated in part by an employment-related purpose, and (d) any force used against another is not unexpected by the employer); Jones v. Penn Minority Business Development Auth., 1998 WL 199653 (E.D. Pa. April 23, 1998) (even assuming prejudicial motivation, Court recognized actions as within scope of duties).[29]

### 4. **Punitive Damages**

Defendant PAT has also moved for summary judgment on Plaintiff's claim for punitive damages. See Memo of Law in Support of PAT's Motion for Summary Judgment at 20-21 (citing Evans v. Port Authority ov New York and New Jersey, 273 F.3d 346, 356 (3d Cir. 2001)). Here, again, Defendant has raised no argument in objection or response. See Reply Brief of PAT

---

29. The Court further concurs with some, but not all, of Defendants' assertions of further infirmities as to the state law claims, and it again notes that employment-action claims were settled through Plaintiff's Union grievance in late April, 2006. The Court need not further analyze these additional issues, given Defendants' entitlement to summary judgment on uncontested grounds of sovereign immunity under State law.

in Support of Motion for Summary Judgment at 2 (noting that Plaintiff "does not dispute" the assertion that PAT is not liable for punitive damages); id. (citing Poli v. SEPTA, 1998 WL 405052 at *14 ("Punitive damages cannot be recovered against SEPTA.")).

### III. CONCLUSION

For the reasons set forth above, it is recommended that Defendants' Motions for Summary Judgment be denied as to Count I of Plaintiff's Complaint as against PAT and Defendant Wagner, and granted as to (a) all other claims and (b) the unavailability of punitive damages against PAT.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

_____
LISA PUPO LENIHAN
United States Magistrate Judge


Dated: May 30, 2008